IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| APRIL GAINES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-15-591-HE |
| | ) | |
| CAROLYN W. COLVIN, acting | ) | |
| Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Defendant Acting Commissioner Carolyn W. Colvin (Commissioner) issued a final decision denying Gaines's (Plaintiff) application for supplemental security income under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). United States Chief District Judge Joe Heaton referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(3) and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, the administrative record (AR), and the parties' briefs, and recommends that the court affirm the Commissioner's decision.

I.  **Administrative proceedings.**

Plaintiff applied for benefits, alleging her impairments became disabling on August 5, 2008. AR 136. The Social Security Administration

(SSA) initially and on reconsideration denied Plaintiff's claim. *Id.* at 78-81, 88-90. At Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing. *Id.* at 27-77, 91-93. The ALJ found that Plaintiff was not disabled as defined in the Social Security Act; the SSA Appeals Council declined Plaintiff's request for review; and Plaintiff now seeks review of the ALJ's final decision. *Id.* at 8-26, 1-6; Doc. 1.

## II.  Disability determination.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920(a)(4); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. *See* 20 C.F.R. § 404.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If she succeeds, the ALJ considers at step three whether Plaintiff has an impairment that meets or equals the severity of a listed impairment. *See* 20 C.F.R. § 416.920(a)(4)(iii). If not, the ALJ makes a residual functional

capacity (RFC)[1] assessment before going to step four to determine what Plaintiff can still do despite her impairments. *Id.* § 416.920(a)(4), (e). *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, if Plaintiff shows she can no longer do her past relevant work, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. 20 C.F.R. § 416.920(e), (f), (g); *Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

## III. Plaintiff's claims of error.

Plaintiff contends the ALJ erred (1) because her "step 2 analysis is woefully lacking"; (2) in her RFC determination and in her findings regarding past relevant work; (3) in the "weight granted to medical professionals"; and (4) in her "[f]ailure to review obesity." Doc. 12, at 2, 3-18.[2]

## IV. Standard for review.

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). The ALJ's "failure to apply the

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

[2] Citation to the parties' briefs refers to this Court's CM/ECF pagination.

3

correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Andrade*, 985 F.2d at 1047 (citation and brackets omitted).

V. **Analysis.**

A. **Claimed step-two error.**

Plaintiff deems "[t]he ALJ's analysis at step 2 [to be] so *deminimis* [sic] it is either judicially unreviewable by this Court or so improper and deficient that it is error." Doc. 12, at 7. Plaintiff then recites "what the ALJ wrote" "[i]n what is known as the special technique part B findings[.]" *Id.* Finally, she contends that "[t]he abject failure of the ALJ decision to tell this court what the proper reasoning should have been at step 2 is indeed error and not harmless. The ALJ's analysis here is terribly deficient, improperly applied, even erroneous." *Id.*

Plaintiff, who is represented by counsel, fails to explain why these findings are deficient — either from a legal or an evidentiary standpoint. Even for a pro se litigant, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Plaintiff's first claim of error fails for lack of support.

4

### B. Claimed step-four errors.

Plaintiff makes two step-four challenges. First, she argues:

> the ALJ violated the requirement of [SSR] 96-8p that "nonexertional capacity [which includes limitations from [Plaintiff's] mental impairments [and moderate impairment in social functioning] must be expressed in terms of work-related functions" nor does it incorporate the great weight physicians impairment.

Doc. 12, at 8-9 (brackets in original). Second, she challenges the ALJ's finding Plaintiff could perform her past relevant work. *Id.* at 9-14.

#### 1. The ALJ's RFC assessment considered Plaintiff's mental impairments in terms of work-related functions.

The ALJ determined that Plaintiff had the medically determinable mental impairments of depression, anxiety, somotaform disorder, and personality disorder. AR 13. The ALJ found these to be severe impairments and next determined that Plaintiff's mental impairments of depression and anxiety caused her "mild restrictions" in activities of daily living, "mild difficulties" in social functioning, "moderate difficulties" in concentration, persistence, and pace, and no episodes of decompensation. *Id.* at 14. The ALJ concluded that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of a Listing and therefore assessed Plaintiff's RFC. *Id.*; 20 C.F.R. § 416.920a(d)(3).

The RFC assessment included nonexertional limitations: she was limited to sedentary work "except sit for 6 hours; stand/walk for 2 hours; no climbing ladders, ropes, or scaffolds; no balancing; occasionally climb stairs and ramps; occasionally kneel, crouch, crawl, or stoop; *perform simple to detailed tasks with routine supervision; able to interact appropriately with supervisors and co-workers for superficial work purposes*; and able to adapt to work situations." AR 14 (emphasis added).

Clearly, the ALJ did not "fail [] to include any mental limitation whatsoever in the RFC" as Plaintiff maintains. Doc. 12, at 9-10. Nor is it "devoid of any mental limitation whatsoever." *Id.* at 9. Equally meritless are Plaintiff's claims that the ALJ "confused mental work-related limitations with skill level when he expressed it as the ability to perform simple work (what the ALJ confirmed in her opinion). *Id.* at 10. The ALJ did *not* limit Plaintiff to "simple work" as Plaintiff claims. *Id.* at 9-10; *see* AR 14. And Plaintiff acknowledges that an analogous limitation to only "understand, carry out, and remember simple instructions is a work-related mental function." Doc. 12, at 12. (quoting, *Jaramillo v. Colvin,* 576 F. App'x 870, 874 (10th Cir. 2014)).

Plaintiff also broadly challenges the ALJ's questioning of the vocational expert, arguing the questions were imprecise and the "ALJ's reliance on the jobs [the vocational expert] identified in response to the hypothetical was not

supported by substantial evidence." Doc. 12, at 12. But, the ALJ's hypothetical questions precisely reflected Plaintiff's limitations as assessed in her RFC, including those limitations borne out by the evidentiary record. AR 72-74. The undersigned concludes substantial evidence supports the ALJ's RFC assessment and her hypothetical questions to the vocational expert.

2. **Past relevant work.**

a. **The law.**

"Step four of the sequential analysis . . . is comprised of three phases." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). "In the first phase, the ALJ must evaluate a claimant's physical and mental [RFC], and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work." *Id.* (citation omitted). "In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id.* "At each of these phases, the ALJ must make specific findings." *Id.* Those findings must be supported by substantial evidence. *Best-Willie v. Colvin*, 514 F. App'x 728, 737 (10th Cir. 2013). Plaintiff retains the burden to establish that she is unable to perform her past relevant work (here, as a dispatcher and telemarketer) both as she actually performed it and as it is generally performed in the national economy. *See O'Dell v. Shalala*, 44 F.3d 855, 859-60 (10th Cir. 1994).

7

### b. Application of the law.

Plaintiff challenges each phase.

#### i. Phase one.

As to phase one, she disagrees with the limitations the RFC assessment contains, arguing it includes no consideration of her mental limitations or her walking limitations and need for a cane. Doc. 12, at 14. She essentially restates her misinterpretation of the RFC assessment regarding its mental work-related limitations. The RFC assessment contained such work-related restrictions because it limited Plaintiff to simple to detailed tasks and noted she could interact appropriately with supervisors and co-workers for superficial work purposes. AR 14.

Contrary to Plaintiff's contention that "[t]here was no walking limitation in the RFC," Doc. 12, at 14, the RFC assessment limited Plaintiff to "stand/walk for 2 hours." AR 14. Plaintiff points to no evidence indicating she was incapable of performing the limited standing and walking abilities found by the ALJ. Plaintiff has shown no error regarding the standing and walking requirements in the ALJ's RFC assessment.

Regarding Plaintiff's need for an assistive device, she admits she has no prescription for one. Doc. 12, at 15; AR 43-44. The medical records indicate Plaintiff used a cane, but also indicated times where she did not use one. Doc. 18, at 8 (collecting record cites). The ALJ properly considered Plaintiff's

difficulties in walking and balancing by including limitations in the RFC assessment, and "limited [her] to work that allowed [her] to sit most of the day." *Lynn v. Colvin*, __ F. App'x __, 2016 WL 26510, at *3 (10th Cir. Jan. 4, 2016). "The difficulty in walking was not ignored; to the contrary, it was included in the administrative law judge's assessment." *Id.* Substantial evidence supports the ALJ's phase-one conclusions.

### ii. Phase two.

In her phase-two challenge, Plaintiff maintains the ALJ improperly delegated her responsibility to make findings to the vocational expert. Doc. 12, at 15. Plaintiff correctly notes that, "[a]t phase two, 'the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work.' To make such findings, an 'ALJ must obtain adequate factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* (quoting *Winfrey*, 92 F.3d at 1024). To make the findings required by phase two of step four, an ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." *Wells v. Colvin*, 727 F.3d 1061, 1074 (10th Cir. 2013) (quoting SSR 82-62, 1982 WL 31386, at *3 (1982)).

The ALJ based her findings on Plaintiff's description of her past job duties and the vocational expert's testimony that Plaintiff's past work fell

9

within certain occupations as defined Dictionary of Occupational Titles (DOT). AR 58-60, 67, 168, 173-75. An ALJ may rely upon the descriptions in the DOT and/or the testimony of a vocational expert in determining the demands of a claimant's PRW as it is generally performed in the national economy. See 20 C.F.R. § 416.960(b)(2). Here, the ALJ permissibly relied on the testimony of the vocational expert in deciding Plaintiff's PRW is that of "telemarketer, DOT #299.657-014, sedentary, SVP 3 and dispatch clerk, DOT #239.367-014, sedentary, SVP 3." AR 21. By citing the DOT, the ALJ incorporated that agency-approved source by reference in his decision. *See Campbell v. Astrue*, 525 F. Supp. 2d 1256, 1264 (D. Kan. 2007) (holding ALJ's reference to the DOT descriptions of plaintiff's prior jobs incorporated that source by reference). This served adequately to establish the ALJ's findings regarding the demands of Plaintiff's PRW at phase two of step four. *See Parise v. Astrue*, 421 F. App'x 786, 789 (10th Cir. 2010) (holding phase-two finding sufficient where ALJ did not make findings regarding claimant's PRW but referenced the pertinent DOT job listing); *Campbell*, 525 F. Supp. 2d at 1264 (holding ALJ's reference to DOT entries satisfied the requirement to make specific findings concerning the demands of plaintiff's PRW). And the ALJ is "presumptively entitled" to rely on the DOT. *Adams v. Colvin*, 616 F. App'x 393, 395 (10th Cir. 2015) (citing *Andrade*, 985 F.2d at 1051-52).

### iii. Phase three.

Plaintiff argues the ALJ's inappropriate phase-two analysis "naturally compromised" her phase-three findings. Doc. 12, at 17. She further argues improper delegation of the ALJ's fact-finding responsibilities, which the undersigned has also rejected.

Plaintiff briefly argues that the ALJ's PRW jobs of telemarketer and dispatch clerk were "too skilled," because they include a reasoning level of three. Doc. 12, at 18. Plaintiff's argument implicates the DOT's General Education Development (GED) Scale, composed of three components: (1) reasoning development; (2) mathematical development; and (3) language development. *See* DOT, App. C, Components of the Definition Trailer, 1991 WL 688702).

> General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. This is education of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such education is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study.

*Id.*

But quite simply, at step four, Plaintiff's education is not a factor:

If [the SSA] find[s] that [the claimant] ha[s] the RFC to do [her] past relevant work, [the SSA] will determine that [she] can still do [her] past work and [is] not disable. [The SSA] *will not consider* [the claimant's] vocational factors of age, *education*, and

11

work experience or whether [her] past relevant work exists in significant numbers in the national economy.

20 C.F.R. § 416.960(b)(3) (emphasis added).

In any event, the Tenth Circuit has indicated that GED Reasoning levels are unrelated to a disability claimant's mental RFC or her ability to perform certain occupations. *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) ("GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development."); *see also Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012) ("Job descriptions in the [DOT] contain several elements required to perform a specific job, including a claimant's GED, which is the level of formal and informal education required to perform a specific job.").

The reasoning development component is composed of six levels. The DOT states that both telemarketer and dispatch clerk require a reasoning level of three, defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [, and d]eal with problems involving several concrete variables in or from standardized situations." DOT, Vol. II at 1011. Level-two reasoning requires the worker to "[a]pply commonsense understanding to carry out detailed but

uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." DOT, Vol. II at 1011.

The Tenth Circuit has held that limiting a claimant to simple, repetitive tasks "seems inconsistent with the demands of level-three reasoning." *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). The vocational expert testified that his opinions did not directly correspond with the DOT and the vocational expert explained the discrepancy by relying on his own education, experience, and observations of the jobs as they are actually performed. *Id.* at 1175. However, the record did not indicate that the vocational expert acknowledged a conflict with the DOT or that he offered any explanation. *Id.* "An ALJ [has] a duty to investigate and obtain a reasonable explanation for any conflict between the DOT and expert testimony before the ALJ may rely on the expert testimony as substantial evidence." *Id.* at 1171. There was no testimony from the vocational expert about whether level-three reasoning actually contradicted the performance of simple and routine takes, the Tenth Circuit remanded the case "to allow the ALJ to address the *apparent* conflict." *Id.* at 1175 (emphasis added).

But such is not the case here. "To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, . . . the ALJ may rely upon the vocational expert's testimony

13

provided that the record reflects an adequate basis for doing so." *Gibbons v. Barnhart*, 85 F. App'x 88, 93 (10th Cir. December 18, 2003) (quoting *Carey v. Apfel*, 230 F.3d 131, 146-147 (5th Cir. 2000). But, the Tenth Circuit held "[o]nce the VE stated that he was relying on the DOT, the ALJ had no further duty to investigate." *Id.*; *Liveoak v. Astrue*, No. 11-CV-678-CVE-TLW, 2013 WL 183710 at *12, *15 (N.D. Okla. Jan. 17, 2013) (noting that the claimant's RFC supported the job descriptions cited by the vocational expert and citing *Gibbons* to hold that the ALJ had no further duty to investigate). Because the vocational expert did not identify the reasoning level at the hearing, the ALJ elicited no explanation for any alleged inconsistency or explain in its decision how the alleged conflict was resolved. The ALJ asked the vocational expert whether the identified jobs "could they be performed as the claimant performed them," and "performed per the DOT." AR 74. The vocational expert answered affirmatively. *Id.* When asked whether any of her testimony "conflict[ed] with any information in the [DOT]" the vocational expert answered, "No, not to my knowledge." *Id.* at 75. And the ALJ's hypotheticals encompassed "a hypothetical person who is the same age, education, and past relevant work as the claimant." *Id.* at 71.

Here, Plaintiff completed the twelfth grade and also had previous work experience as a telemarketer and dispatch clerk. Her RFC assessment does not limit her to simple repetitive tasks. The ALJ discounted Plaintiff's

14

testimony, and Plaintiff does not challenge that finding. *See* AR 16. As noted her mental health history indicates her thought was "intact" and "oriented x 3." *See* AR 440-44. Her judgment and insight are good, her memory intact, her attitude cooperative and her affect appropriate. *See id.* Plaintiff's counsel identified no inconsistencies between the VE's testimony and the DOT at her hearing. Plaintiff's counsel did not question the vocational expert regarding any inconsistencies. *See* i*d.* at 75-76. Plaintiff has not carried her step-four burden and substantial evidence supports the ALJ's conclusions. *O'Dell*, 44 F.3d 859-60.

### C. The alleged error in the weight granted to medical professionals.

Plaintiff takes issue with the ALJ's affording "little limited weight" to the opinions of Shanna Lawson, a licensed clinical social worker (LCSW), who completed a medical source statement regarding Plaintiff's mental impairments. AR 20; Doc. 18, at 12. Ms. Lawson noted various extreme losses relating to carrying out detailed instructions, working in proximity to others, making simple work-related decisions, moderate losses in socially appropriate behavior, marked losses in the ability to adhere to basic standards of neatness and cleanliness, and a variety of other deficiencies. AR 20, 413-17. The ALJ found her opinion inconsistent with treating physician Dr. Al-Botros' treatment notes. Plaintiff maintains Dr. Al-Botros' records are

predominantly disfavored checklist-styled forms that cannot defeat Ms. Lawson's evaluation, and that is not measuring work performance. Doc. 18, at 12.

The ALJ considered Ms. Lawson's medical source statement, as she must. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record, . . . although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." (internal citation omitted)). A licensed clinical social worker is not an "acceptable medical source," *see* SSR 06-03p, and had no on-going treatment relationship with Plaintiff. Substantial evidence supports the ALJ's determination.

### D. The ALJ's alleged "[f]ailure to review obesity."

Plaintiff lastly contends that the ALJ erred in failing to consider the effects of Plaintiff's obesity and does not mention obesity in her findings.

> The ALJ must consider the effects of obesity when assessing the claimant's RFC. See SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002). The ALJ may not, however, "make assumptions about the severity or functional effects of obesity combined with other impairments." *Id.* at *6. Rather, the ALJ must "evaluate each case based on the information in the case record." *Id.* [Here,] the ALJ did not specifically mention obesity in the RFC determination, but included limitations and restrictions for stooping, kneeling, and crouching.

*Rose v Colvin*, __ F. App'x __, 2015 WL 8593444, at *3-4 (10th Cir. Dec. 14, 2015); AR 14.

As in *Rose*, Plaintiff points to "no medical evidence indicating that her obesity resulted in functional limitations." *Id.* at *4. "[H]er hearing testimony did not describe limitations due to obesity." *Id.* Plaintiff did not allege obesity prevented her from working — she mentioned it neither in her application, nor in any disability report. Significantly, no doctor indicated that Plaintiff's weight caused functional limitations or adversely affected any impairments. Plaintiff did not complain about her weight to her treating physicians or clinicians, nor did she testify that obesity caused or exacerbated his impairments. And that the record indicates Plaintiff used a cane does not alter the fact that no treating physician or clinician prescribed an ambulatory assistance device for Plaintiff or related her medical need for such an assistive device. "'The factual record does not support Plaintiff's position that her obesity, whether alone or in combination with other conditions precludes her from performing a limited range of sedentary work.'" *Id.* (quoting *Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004)).

## VI. Recommendation and notice of right to object.

The undersigned recommends that the court affirm the Commissioner's decision.

The undersigned advises the parties of their right to object to this report and recommendation by the 18th day of February, 2016, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further

17

advises the parties that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 29th day of January, 2016.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE